**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rashiel Salem Enterprises LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Cheryl A. Bunton, et al.,<br><br>    Defendants. | No. CV-11-08202-PHX-NVW<br><br>**ORDER** |

Before the Court is Southern California Edison Company Retirement Plan's Motion for Summary Judgment on Its Counterclaims. In its Motion, Southern California Edison Company Retirement Plan (the Retirement Plan) argues it is entitled to judgment as a matter of law on its counterclaims against Lela Cameron, John Doe Cameron, and Mohave Estate Management Office (Mohave). For the following reasons, the Retirement Plan's Motion for Summary Judgment will be denied.

**I.    Background**

This case began when Mohave brought claims against Cheryl Bunton and Southern California Edison Company (SCE), an electrical utility in California, relating to the pension benefits of Lela Cameron. The Retirement Plan is a defined-benefit ERISA plan that provides benefits to retirees from SCE. Mohave, as the guardian and conservator for Ms. Cameron, sought declaratory relief and reinstatement of Ms. Cameron's pension benefits on the grounds that SCE wrongly terminated those benefits after Ms. Bunton caused the benefit to be liquidated. In response, the Retirement Plan

brought counterclaims against Ms. Cameron and Mohave, claiming that Ms. Cameron received two errant payments from the Retirement Plan and failed to return those funds.

Ms. Cameron, an employee of SCE, qualified for long term disability benefits from SCE after she became unable to work due to Huntington Disease in 1997. As part of her employment with SCE, Ms. Cameron also participated in SCE's Retirement Plan. As part of the Retirement Plan, Ms. Cameron had the option of receiving monthly retirement benefits or a lump sum payment of all her earned benefits after she separated from SCE's service.

As her disease progressed, Ms. Cameron became unable to care for herself. Her father, Daniel Frasier, became her caregiver and remained so until he passed away in 2009. Ms. Bunton served as Mr. Frasier's housekeeper and assisted with Ms. Cameron's care. Around the time of Mr. Frasier's death, Ms. Bunton began to refer to herself as Ms. Cameron's trustee. In September 2009, Ms. Bunton arranged for Ms. Cameron to execute estate planning documents and assumed control of all of Ms. Cameron's finances. Ms. Cameron by then lacked the capacity to manage her finances herself.

At some point after September 3, 2009, Ms. Bunton submitted a power-of-attorney document to SCE in which she purported to assume power-of-attorney on behalf of Ms. Cameron. The parties vigorously dispute whether Ms. Cameron had the capacity to execute a valid power-of-attorney in favor of Ms. Bunton at that time, but, for reasons discussed below, that dispute is immaterial to this summary judgment motion. In November, 2009, Ms. Bunton contacted the Retirement Plan to request a lump-sum distribution of Ms. Cameron's pension benefits, purportedly acting under the power of attorney for Ms. Cameron.

Ms. Cameron's retirement had accrued a lump-sum value of $120,138.40 in November 2009. That amount was subject to mandatory federal income tax withholding in the amount of $24,027.68. As a result, the correct lump-sum payment to Ms. Cameron would have been $96,110.72. In response to Ms. Bunton's request, on February 1, 2010, the Retirement Plan deposited $120,138.40 into Ms. Cameron's bank account, which was

at that time controlled by Ms. Bunton. Due to the Retirement Plan's processing error, the federal income tax was not withheld, and the Retirement Plan overpaid $24,027.68 on Ms. Cameron's account. On March 1, 2010, the Retirement Plan deposited another $96,548.86 into the bank account. That entire amount was deposited because of another of the Retirement Plan's processing errors. In total, the Retirement Plan's errors resulted in its $120,576.54 overpayment on Ms. Cameron's retirement plan.

Ms. Bunton subsequently used Ms. Cameron's bank account to write checks, make debit card purchases, and take ATM withdraws for Ms. Bunton's personal spending in a total amount of at least $138,298.36. In November 2011, Ms. Bunton pled guilty to one count of theft in Mohave County Superior Court and was sentenced to six years in prison. It total, Ms. Bunton stole more than $200,000 worth of Ms. Cameron's property and money while Ms. Cameron was incapacitated.

**II.  Legal Standard**

The Retirement Plan moves for summary judgment on its counterclaim that Lela Cameron must return the overpayment the Retirement Plan made in its lump-sum disbursement of Ms. Cameron's pension benefits. A party moving for summary judgment must demonstrate that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of showing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). At the summary judgment stage, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the non-moving party. *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).

**III.  Analysis**

    **A.  Equitable Relief Under ERISA**

Ordinarily, a party in the Retirement Plan's position would file a claim for breach

1  of contract and seek relief in the form of a judgment for money damages.  Under §
2  502(a)(3) of ERISA, however, a plan fiduciary such as the Retirement Plan can seek only
3  "equitable relief" from a plan participant such as Ms. Cameron.  *Bilyeu v. Morgan*
4  *Stanley Long Term Disability Plan*, 683 F.3d 1083, 1091 (9th Cir. 2012) *cert. denied*, 133
5  S. Ct. 1242 (2013); 29 U.S.C. § 1132(a)(3)(B).  Section 502(a)(3) of ERISA authorizes a
6  civil action: "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
7  which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief
8  (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the
9  plan."  29 U.S.C. § 1132(a)(3).  The Retirement Plan may therefore seek equitable relief
10 under § 502(a)(3) to enforce the terms of the plan.  As a result, under ERISA, the
11 Retirement Plan may only seek "the kinds of relief typically available in equity in the
12 days of the divided bench, before law and equity merged"; it may not seek legal relief.
13 *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1544 (2013) (citation and internal
14 quotation marks omitted).

15 In order to maintain an action against Ms. Cameron, then, the Retirement Plan
16 must demonstrate that the relief it seeks is equitable under § 502(a)(3).  Here, the
17 Retirement Plan seeks "in essence, to impose personal liability on [Ms. Cameron] for a
18 contractual obligation to pay money—relief that was not typically available in equity."
19 *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).  In some
20 cases, however, a plaintiff "could seek restitution *in equity,* ordinarily in the form of a
21 constructive trust or an equitable lien, where money or property identified as belonging in
22 good conscience to the plaintiff could clearly be traced to particular funds or property in
23 the defendant's possession."  *Id*. at 213.  To determine whether the kind of relief the
24 Retirement Plan seeks here—restitution of funds improperly paid to a plan beneficiary—
25 is equitable rather than legal restitution, courts therefore must examine whether a plaintiff
26 "sought to impose a constructive trust or equitable lien on 'particular funds or property in
27 the defendant's possession.'"  *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362
28 (2006) (quoting *Great-West*, 534 U.S. at 210).

The fact that the Retirement Plan seeks a money payment in this case does not, therefore, necessarily "remove it from the category of traditionally equitable relief." *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011). Rather, the Retirement Plan may recover a money judgment for reimbursement of overpayments it made to Ms. Cameron if the money it seeks to recover is the particular disbursement that the Retirement Plan made on her behalf. *Id.* at 1878. But the Ninth Circuit recently emphasized that *Sereboff* "did not purport to do away with the long established principle that an equitable lien by agreement applies only to '*particular* funds or property *in the defendant's possession*.'" *Bilyeu*, 683 F.3d at 1092. The lien or constructive trust the Retirement Plan seeks can only be equitable relief, in other words, if the funds it would recover are the specifically identified funds at issue, distinct from Ms. Cameron's general assets. *Sereboff*, 547 U.S. at 364.

### B. Criteria for Equitable Liens in ERISA Actions

The Retirement Plan contends that it is entitled to summary judgment because the undisputed facts show that SCE's retirement plan paid a total of $216,687.26 on Ms. Cameron's behalf, which represents an overpayment of $120,576.54. According to the Retirement Plan, the plain terms of the governing Summary Plan Description require Ms. Cameron to repay SCECRP for any overpayment. The Retirement Plan contends that the Summary Plan Description created an equitable lien by agreement which, under *Sereboff*, permits the Retirement Plan to follow the overpayments into Ms. Cameron's hands and impose an equitable lien on those funds.

The Ninth Circuit has, however, interpreted *Sereboff* to establish at least three clear criteria that the Retirement Plan must meet in order to establish an equitable lien by agreement in an ERISA action. "*First,* there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of [an overpayment] . . . *Second,* the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed. *Third,* the funds specifically identified by the fiduciary must be within the

1 possession and control of the beneficiary." *Bilyeu*, 683 F.3d at 1092-93 (citations and
2 internal quotation marks omitted). These three criteria are the only relevant questions of
3 law and fact in this Motion for Summary Judgment. The dispute between the parties
4 about whether the Retirement Plan knew or should have known about Ms. Cameron's
5 disability, and correspondingly about whether the Retirement Plan should have honored
6 the power of attorney in favor of Ms. Bunton, therefore has no bearing on the Court's
7 analysis.

### 1. Promise To Reimburse

9 In this case, the first criterion from *Bilyeu* is satisfied. The Summary Plan
10 Description, which describes "the main features of the Retirement Plan," clearly sets
11 forth that if a beneficiary of the plan receives an overpayment, the beneficiary "will be
12 required to repay the plan." (Doc. 62 at 4.) Ms. Cameron does not dispute that this
13 language was a part of the plan description; rather, she contends that the first criterion is
14 not met because she has not and will not receive the overpayment herself. The first
15 criterion does not require that the condition triggering the promise come to pass,
16 however; the requirement is only that the beneficiary promised to reimburse the fiduciary
17 in the event of the condition. Ms. Cameron promised to repay the Retirement Plan in the
18 event of an overpayment, and so the first criterion is met.

### 2. Specific Property for Reimbursement

20 It is unclear in this case, as it was in *Bilyeu*, whether the second criterion—the
21 agreement must specifically identify a particular fund, distinct from the beneficiary's
22 general assets, from which the fiduciary will be reimbursed—is satisfied. The Summary
23 Plan Description does specify that "[o]verpayment resulting from an error may be
24 deducted from future benefit payments, if any." (Doc. 62 at 4.) If that portion of the
25 Summary Plan were relevant in this case, the agreement would have specified a particular
26 fund from which the Retirement Plan would be reimbursed: future benefit payments, as
27 distinct from Ms. Cameron's general assets. But because there were no future benefit
28 payments to be made after the lump-sum distribution of Ms. Cameron's pension, that

1 language has no bearing on this case.

2 Rather, the relevant language is "[i]f you receive an overpayment, you will be
3 required to repay the plan." (*Id.*) As a result, the Plan Description raises the same
4 problem for equitable relief that the Ninth Circuit identified in *Bilyeu*: the overpaid
5 benefits themselves are meant to be the specifically identified fund. 683 F.3d at 1093.
6 As in that case, the overpaid benefits here "are not a particular *fund,* but a specific
7 amount of money encompassed *within* a particular fund—the . . . benefits [the fiduciary]
8 paid to [the beneficiary]." *Id.* As a result, "the overpayment has never existed as a
9 distinct object or fund." *Id.* That makes a determination of whether the overpayment is
10 specific property, separate from Ms. Cameron's general assets, problematic. If there
11 were remaining benefits payments from the retirement plan from which the Retirement
12 Plan could draw the reimbursement funds, the requirement of specific property would
13 have been met. There were not, and the Retirement Plan therefore cannot establish that
14 the agreement specifically identifies a particular fund as required by the second criterion.

### 3. Specific Funds Within Beneficiary's Possession

16 Even if the second criterion were met, summary judgment for the Retirement Plan
17 would be inappropriate because the Retirement Plan cannot show that the overpaid funds
18 are in Ms. Cameron's possession and control. The third *Bilyeu* criterion is a "requirement
19 that the specifically identified funds be within [the beneficiary's] 'possession and
20 control.'" *Id*. at 1094 (quoting *Sereboff*, 547 U.S. at 363). In *Sereboff*, the fiduciary
21 sought to recover funds that were within the possession and control of the beneficiaries
22 and that had "been set aside and preserved in the Sereboffs' investment accounts." 547
23 U.S. at 363. The Ninth Circuit, disagreeing with other circuits in their application of
24 *Sereboff*, found that equitable relief was not available to the fiduciary even when the
25 specific funds are not within the beneficiary's possession simply because the beneficiary
26 spent them all. *Bilyeu*, 683 F.3d at 1094.

27 In this case, by contrast, there is no dispute that the overpaid funds are not within
28 Ms. Cameron's possession. Indeed, this case is a particularly stark demonstration of a

situation in which the beneficiary no longer possess the property the fiduciary seeks to recover through no fault of the beneficiary. If Ms. Cameron would not be subject to an equitable lien even if she had spent the overpayment, it would be particularly inequitable to impose such a lien when the overpayment is not in her possession because Ms. Bunton stole it. Because Ms. Cameron does not have the overpayment in her possession, the Retirement Plan is seeking "the imposition of personal liability, rather than enforcement of an equitable lien on particular property." *Id*. (citation and internal quotation marks omitted). That kind of relief "is quintessentially legal, rather than equitable," and it is not available to the Retirement Plan under ERISA. *Id*.

The Retirement Plan also contends that that Ms. Cameron's judgment against Ms. Bunton in this case represents an asset of Ms. Cameron's that is traceable to the overpayments. This argument is problematic for two reasons: first, those funds are not yet within Ms. Cameron's possession and control; second, the Retirement Plan has not established an absence of disputed facts as to the contents of the judgment against Ms. Bunton. Without a showing that some specific portion of that judgment is traceable to the overpayments and that the specific portion is within Ms. Cameron's possession or control, the Retirement Plan cannot show that it is entitled to equitable relief as a matter of law.

### C. Remaining Issues

The facts relevant to the Retirement Plan's Motion for Summary Judgment are not in dispute; the issue in this Motion is the purely legal question of whether, on those facts, the Retirement Plan is entitled to judgment. For all of the reasons above, the Retirement Plan has not shown that it is entitled to judgment as a matter of law. As a result, though they have not yet moved for summary judgment, it seems that judgment on these counterclaims would be appropriate in favor of Mohave and Ms. Cameron. The Court may, after giving notice and a reasonable time to respond, grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f)(1). As a result, the Retirement Plan will be ordered to show cause why summary judgment should not be granted in favor Mohave and Ms.

Cameron.

As discussed at oral argument on this Motion, apart from obtaining a default judgment against Cross Defendant Cheryl Bunton, it also appears that the Retirement Plan's remaining counterclaims are resolved by this order. Any rights that the Retirement Plan may have to Ms. Cameron's hypothetical recovery of all of her default judgment against Ms. Bunton are premature for adjudication. If future events come to pass that make such adjudication necessary, the Retirement Plan can pursue it at that time. As a result, the Retirement Plan will also be ordered to show cause why its remaining counterclaims should not be dismissed as premature and why this action should not be terminated.

IT IS THEREFORE ORDERED that Southern California Edison Company Retirement Plan's Motion for Summary Judgment on Its Counterclaims (Doc. 62) is denied.

IT IS FURTHER ORDERED that Southern California Edison Company Retirement Plan show cause why summary judgment should not be granted in favor of Mohave and Ms. Cameron on its counterclaims under Rule 56(f)(1) by August 9, 2013.

IT IS FURTHER ORDERED that Southern California Edison Company Retirement Plan show cause why the remainder of its counterclaims should not be dismissed and why this action should not be terminated by August 9, 2013.

Dated this 12th day of July, 2013.

_____
Neil V. Wake
United States District Judge